**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| SEMCRUDE, L.P., <u>et al.</u>, | ) | Case No. 08-11525 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ———————————————— | ) | |
| | ) | |
| SAMSON RESOURCES COMPANY; | ) | Adversary No. 09-51520 |
| SAMSON LONESTAR, L.L.C.; and | ) | Related to Adv. Docket No. 10 |
| SAMSON CONTOUR ENERGY E&P, | ) | |
| L.L.C., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| J. ARON & COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |
| | ) | |
| SAMSON RESOURCES COMPANY; | ) | Adversary No. 09-51070 |
| SAMSON LONESTAR, L.L.C.; and | ) | Related to Adv. Docket No. 42 |
| SAMSON CONTOUR ENERGY E&P, | ) | |
| L.L.C., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BP OIL SUPPLY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |
| | ) | |
| SAMSON LONESTAR, L.L.C.; and | ) | Adversary No. 09-51941 |
| SAMSON CONTOUR ENERGY E&P, | ) | Related to Adv. Docket No. 8 |
| L.L.C., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |

BP OIL SUPPLY COMPANY,                          )
                                                )
                    Defendant.                  )
_____        )
                                                )
SAMSON RESOURCES COMPANY,                       )    Adversary No. 09-51518
                                                )    Related to Adv. Docket No. 7
                    Plaintiff,                  )
                                                )
        v.                                      )
                                                )
CONOCOPHILLIPS COMPANY,                         )
                                                )
                    Defendant.                  )
_____        )
                                                )
SAMSON RESOURCES COMPANY;                       )    Adversary No. 09-53285
SAMSON LONESTAR, L.L.C.; and                    )    Related to Adv. Docket No. 4
SAMSON CONTOUR ENERGY E&P,                      )
L.L.C.,                                         )
                                                )
                    Plaintiffs,                 )
                                                )
        v.                                      )
                                                )
SUNOCO LOGISTICS PARTNERS, L.P.,                )
                                                )
                    Defendant.                  )
_____        )
                                                )
SAMSON RESOURCES COMPANY;                       )    Adversary No. 09-53286
SAMSON LONESTAR, L.L.C.; and                    )    Related to Adv. Docket No. 4
SAMSON CONTOUR ENERGY E&P,                      )
L.L.C.,                                         )
                                                )
                    Plaintiffs,                 )
                                                )
        v.                                      )
                                                )
SUNOCO LOGISTICS PARTNERS, L.P.,                )
                                                )
                    Defendant.                  )
_____        )

| | | |
|---|---|---|
| SAMSON RESOURCES COMPANY;<br>SAMSON LONESTAR, L.L.C.; and<br>SAMSON CONTOUR ENERGY E&P,<br>L.L.C., | )<br>)<br>)<br>)<br>) | Adversary No. 09-52831<br>Related to Adv. Docket No. 6<br><br>Adversary No. 09-52853<br>Related to Adv. Docket No. 2 |
| Plaintiffs,<br>v.<br><br>COFFEYVILLE RESOURCE REFINING &<br>MARKETING L.L.C.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| ————————————————— | )<br>) | |
| SAMSON RESOURCES COMPANY;<br>SAMSON LONESTAR, L.L.C.; and<br>SAMSON CONTOUR ENERGY E&P,<br>L.L.C., | )<br>)<br>)<br>)<br>) | Adversary No. 09-52818<br>Related to Adv. Docket No. 9<br><br>Adversary No. 09-52819<br>Related to Adv. Docket No. 8 |
| Plaintiffs,<br><br>v.<br><br>VALERO MARKETING & SUPPLY<br>COMPANY; SUNOCO LOGISTICS<br>PARTNERS, L.P.; NATIONAL<br>COOPERATIVE REFINERY<br>ASSOCIATION; HUSKY MARKETING &<br>SUPPLY COMPANY; CHEVRON TEXACO<br>L.P.; TEPPCO CRUDE G.P., L.L.C.;<br>CIMARRON GATHERING, L.P.;<br>INTERSTATE PETROLEUM<br>CORPORATION; OCCIDENTAL ENERGY<br>MARKETING, INC.; OASIS<br>TRANSPORTATION & MARKETING<br>COMPANY; PLAINS MARKETING G.P.,<br>INC.; SHELL OIL COMPANY;<br>COFFEYVILLE RESOURCE REFINING &<br>MARKETING; J. ARON & COMPANY; BP<br>OIL SUPPLY COMPANY; and<br>CONOCOPHILLIPS COMPANY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Adversary No. 09-52820<br>Related to Adv. Docket No. 7<br><br>Adversary No. 09-52821<br>Related to Adv. Docket No. 7<br><br>Adversary No. 09-52822<br>Related to Adv. Docket No. 7<br><br>Adversary No. 09-52823<br>Related to Adv. Docket No. 7<br><br>Adversary No. 09-52824<br>Related to Adv. Docket No. 7<br><br>Adversary No. 09-52826<br>Related to Adv. Docket No. 7<br><br>Adversary No. 09-52827<br>Related to Adv. Docket No. 7<br><br>Adversary No. 09-52828<br>Related to Adv. Docket No. 7 |

)    Adversary No. 09-52829
)    Related to Adv. Docket No. 7
)
)    Adversary No. 09-52830
)    Related to Adv. Docket No. 7
)
)    Adversary No. 09-52834
)    Related to Adv. Docket No. 9
)

_____    )

# OPINION[1]

Before the Court are two sets of motions filed by Samson Resources Company and its

affiliates (collectively, "Samson") requesting abstention, retransfer, and/or remand.  By these

motions, Samson asks the Court to abstain from, retransfer and/or remand, where applicable,

numerous actions initially filed in state and district courts in Oklahoma, which have been

transferred to this District by three federal judges in Oklahoma and then referred to this Court.[2]

Because the Court finds that it has "related-to" subject matter jurisdiction over the claims against

the Tender Parties[3] and the Claim Parties, the Court will not retransfer and/or remand the actions

that implicate these claims.  The Court also finds that abstention does not apply to those actions,

such that the claims against the Tender Parties and the Claim Parties will therefore be heard in

---

[1]    This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.  To the extent that this Court's jurisdiction is determined to be within the parameters of 28 U.S.C. § 157(c)(1), this Opinion and the accompanying Order shall be deemed to be the Court's proposed findings of fact and conclusions of law.

[2]    The following adversary proceedings were originally filed in federal court and are therefore ineligible for remand: 09-51070, 09-51518, 09-15120, 09-51941, 09-53285, 09-53286, and 09-52853.

[3]    Capitalized terms used in this section are defined infra.

this Court.  However, the Court finds that it lacks "related-to" jurisdiction over the claims against

the No-Claim Parties.  Because various actions at bar collectively implicate Samson's claims

against the No-Claim Parties, the Tender Parties, and the Claim Parties, the Court will retain

these actions[4] but dismiss the claims against the No-Claim Parties therein.  Dismissal will be

without prejudice to the plaintiffs' right to prosecute such claims in the courts in which they were

initially filed.

## I.  INTRODUCTION

The motions presently before the Court relate to two separate groups of defendants.  The

first set of motions (the "Tender Parties Motions") [Adv. No. 09-51520, Adv. Docket No. 10;

Adv. No. 09-51070, Adv. Docket No. 42; Adv. No. 09-51941, Adv. Docket No. 8; and Adv. No.

09-51518, Adv. Docket No. 7] relate exclusively to the "Tender Parties,"[5] so called because they

tendered funds into the Debtors' estates during the pendency of the Debtors' consolidated

bankruptcy cases on account of the amounts they owed the Debtors for the oil and gas that they

purchased from the Debtors.[6]  The Tender Parties played an active role in the Debtors'

consolidated bankruptcy cases, and the Court has already considered and ruled upon its subject

matter jurisdiction over the adversaries filed in the Court by the Tender Parties (collectively, the

---

[4]     The Court will dismiss the claims by Samson against the No-Claim Parties that are included in the transferred actions at issue in the following adversary proceedings: 09-52818, 09-52819, 09-52820, 09-52821, 09-52822, 09-52823, 09-52824, 09-52826, 09-52827, 09-52828, 09-52829, 09-52830, and 09-52834.  The Court will thereafter retain such actions for the purpose of adjudicating Samson's claims against the Tender Parties and the Claim Parties included therein.

[5]     The Tender Parties are B.P. Oil Supply Company ("B.P."), ConocoPhilips Company ("Conoco"), J. Aron & Company ("J. Aron"), and Plains Marketing, L.P. ("Plains").

[6]     The actions relating exclusively to the Tender Parties are adversary proceedings 09-51070, 09-51518, 09-15120, and 09-51941.

"Tender Adversaries") against Samson and other producers of the oil and gas that the Debtors

had purchased prior to seeking bankruptcy protection (collectively with Samson, the

"Producers"),[7] seeking a declaratory judgment that their prior tender has relieved them of any

obligation to the Producers.  See ConocoPhillips Co. v. Bank of America, N.A. (In re SemCrude,

L.P.), 428 B.R. 82, 100 (Bankr. D. Del. 2010) (finding that the Court possesses "related-to"

subject matter jurisdiction over the Tender Adversaries), appeal dismissed, Civ. Nos. 10-447, 10-

448, 10-449, 10-450, 10-451, 10-452, 10-452, 10-453, 10-454, 10-455, 10-456, 10-457, 10-458,

10-459, 10-460, 10-460, 10-461, 10-462, 10-463, 10-464, 10-465, 10-466, 10-467, 10-468, 10-

469 (SLR), 2010 WL 4537921, at *5-6 (D. Del. Oct. 26, 2010).  By the Tender Parties Motions,

Samson asks the Court to find that it does not possess subject matter jurisdiction over the actions

filed by Samson against the Tender Parties in state and district courts in Oklahoma, subsequently

removed and/or transferred to this District, and then referred to this Court, or alternatively, to

abstain from hearing these actions and retransfer them in favor of the Oklahoma courts in which

they were initially filed.

---

[7]       The Producers include Samson; New Dominion, L.L.C.; Arrow Oil & Gas, Inc.;
Chesapeake Energy Marketing, Inc.; Special Energy Corporation; DC Energy, Inc.; Thunder Oil
and Gas, L.L.C.; Veenker Resources, Inc.; Lance Ruffel Oil & Gas Corporation; JMA Energy
Company, L.L.C.; LCS Production Company; Murfin Drilling Company, Inc.; Vess Oil
Corporation; LD Drilling, Inc.; Davis Petroleum, Inc.; RAMA Operating Company, Inc.; Mull
Drilling Company, Inc.; D E Exploration, Inc.; Braden-Deem, Inc.; Dunne Equities, Inc.; Lario
Oil & Gas Company; McCoy Petroleum Corporation; W.D. Short Oil Company, L.L.C.; Short &
Short, L.L.C.; Tempest Energy Resources, L.P; Calvin Noah; CMX, Inc.; L&J Oil Properties,
Inc.; McGinness Oil Company of Kansas, Inc.; Daystar Petroleum, Inc.; F.G. Holl Company,
L.L.C.; GRA EX, L.L.C.; V.J.I. Natural Resources, Inc.; J&D Investment Company; Landmark
Resources, Inc.; Mid-Continent Energy Corporation; Molitor Oil, Inc.; Osborne Heirs Company;
Pickrell Drilling Company, Inc.; Platte Valley Oil Company, Inc.; Midwest Energy, Inc.; Red
Oak Energy, Inc.; Ritchie Exploration, Inc.; Thoroughbred Associates, L.L.C.; Viking
Resources, Inc.; Vincent Oil; Wellstar Corporation; White Exploration, Inc.; and White Pine
Petroleum Corporation.

The second set of motions (the "Non-Tender Parties Motions") [Adv. No. 09-52818,

Adv. Docket No. 9; Adv. No. 09-52819, Adv. Docket No. 8; Adv. No. 09-52820, Adv. Docket

No. 7; Adv. No. 09-52821, Adv. Docket No. 7; Adv. No. 09-52822, Adv. Docket No. 7; Adv.

No. 09-52823, Adv. Docket No. 7; Adv. No. 09-52824, Adv. Docket No. 7; Adv. No. 09-52826,

Adv. Docket No. 7; Adv. No. 09-52827, Adv. Docket No. 7; Adv. No. 09-52828, Adv. Docket

No. 7; Adv. No. 09-52829, Adv. Docket No. 7; Adv. No. 09-52830, Adv. Docket No. 7; Adv.

No. 09-52834, Adv. Docket No. 9; Adv. No. 09-52831, Adv. Docket No. 6; Adv. No. 09-52853,

Adv. Docket No. 2; Adv. No. 09-53285, Adv. Docket No. 4; and Adv. No. 09-53286, Adv.

Docket No. 4] relate to actions that include claims against both the Tender Parties and the "Non-

Tender Parties,"[8] so called because they purchased oil and gas from the Debtors, but did not

tender funds into the Debtors' estates during the pendency of the Debtors' consolidated

bankruptcy cases, did not file lawsuits in the Court to determine their rights vis-à-vis the

Producers, and unlike the Tender Parties, did not otherwise take an active role in the Debtors'

consolidated bankruptcy cases (collectively, with the Tender Parties, the "Downstream

Purchasers").[9]  By the Non-Tender Parties Motions, Samson asks this Court to find that it does

not possess subject matter jurisdiction over the claims filed against the Non-Tender Parties in

---

[8]     The Non-Tender Parties include Sunoco Logistics Partners, L.P. ("Sunoco"); Valero
Marketing and Supply Company ("Valero"); National Cooperative Refinery Association
("National"); Husky Marketing and Supply Company ("Husky"); Chevron Texaco, L.P.
("Chevron"); Teppco Crude GP, L.L.C. ("Teppco"); Cimarron Gathering, L.P. ("Cimarron");
Interstate Petroleum Corporation ("Interstate"); Occidental Energy Marketing, Inc.
("Occidental"); Oasis Transportation and Marketing Company ("Oasis"); Shell Oil Company
("Shell"); and Coffeyville Resource Refining & Marketing ("Coffeyville").

[9]     As noted supra, the actions relating to both the Tender Parties and the Non-Tender Parties
are adversary proceedings 09-53285, 09-53286, 09-52831, 09-52853, 09-52818, 09-52819, 09-
52820, 09-52821, 09-52822, 09-52823, 09-52824, 09-52826, 09-52827, 09-52828, 09-52829, 09-
52830, and 09-52834.

Oklahoma state and district courts, subsequently removed and/or transferred to this District, and then referred to this Court, or alternatively, to abstain from hearing the actions implicating these claims in favor of the courts in which they were originally filed.

## II.  BACKGROUND

A.    **Factual Background**[10]

The litigation originates from a series of transactions that are not in material dispute. Samson and the Producers own or operate oil and gas wells.  In the summer of 2008, before the Debtors filed for chapter 11 protection on July 22, 2008 (the "Petition Date"), Samson and the Producers delivered millions of dollars worth of oil and gas to the Debtors.  The Debtors then sold or transferred some of that oil and gas to the Downstream Purchasers.  The Debtors did not pay Samson for any of the oil and gas delivered in the seven weeks leading up to the Petition Date.

In the motions, Samson has asserted that, under various state laws, it has the legal right to seek payment directly from the Downstream Purchasers because it has not been paid for the oil and gas it had delivered to the Debtors.  In essence, Samson contends that the transfer of "its" oil and gas from the Debtors to the Downstream Purchasers occurred subject to Samson's state law lien claims and/or trust rights.  The Downstream Purchasers, on the other hand, contend that they purchased the oil and gas from the Debtors free and clear of any liens, claims, and encumbrances.

---

[10]    For general background about the Debtors and their consolidated bankruptcy cases, see Samson Res. Co. v. SemCrude, L.P. (In re SemCrude, L.P.), 407 B.R. 140, 143-48 (Bankr. D. Del. 2009).

B.    **Procedural Background**

During the pendency of the Debtors' consolidated bankruptcy cases, various Producers from eight states sought declaratory judgments concerning their asserted lien claims and/or trust rights vis-à-vis the Debtors and the Debtors' secured lenders.  In a series of three opinions, the Court held that the secured lenders' duly perfected security interests arising under Article 9 of the Uniform Commercial Code are superior to any lien claims and/or trust rights purportedly held by the Producers under the state laws of Texas, Kansas, and Oklahoma.  See Arrow Oil & Gas, Inc. v. SemCrude, L.P. (In re SemCrude, L.P.), 407 B.R. 112, 139 (Bankr. D. Del. 2009); Mull Drilling Co., Inc., v. SemCrude, L.P. (In re SemCrude, L.P.), 407 B.R. 82, 110 (Bankr. D. Del. 2009); In re SemCrude, L.P., 407 B.R. at 156-57.  These same state laws are at issue in the actions at bar, though Samson now seeks to determine its rights as against the Downstream Purchasers rather than the Debtors and the Debtors' secured lenders.

Before the Debtors' bankruptcy plan was confirmed on October 28, 2009, Samson and certain Producers filed numerous lawsuits in state and district courts seeking to assert their purported lien claims and/or trust rights against various Downstream Purchasers.  Between December 2008 and July 2009, Samson filed twenty-one cases in Oklahoma against the Downstream Purchasers.  The three federal judges assigned to these cases,[11] which either originated in district court or were removed to the district court from state court, transferred

---

[11]    Judge Gregory K. Frizzell and Judge Terence Kern of the Northern District of Oklahoma, and Judge Joe Heaton of the Western District of Oklahoma.

venue of these cases to this District in contemplation of referral to this Court.  The actions presently before the Court are precisely these twenty-one transferred cases.[12]

In addition, during the pendency of the Debtors' consolidated bankruptcy cases, each of the Tender Parties sought to offset their respective obligations to the Debtors and to remit to the Debtors' estates the net amounts owed to the Debtors for the purchased oil and gas.  Because the Tender Parties were concerned about the potential of double liability in the event that the Producers were successful in asserting their lien claims and/or trust rights, they initiated the aforementioned Tender Adversaries.  Each of the Tender Parties filed an adversary proceeding seeking a declaratory judgment from the Court that the tender of its net settlement amount to the Debtors constituted full performance such that it had no further obligation to the Debtors or any other party, including the Producers, on account of the pre-petition oil and gas it received from the Debtors.  Samson moved to dismiss the Tender Adversaries for lack of subject matter jurisdiction.  On April 9, 2010, this Court issued an opinion (the "April 9 Opinion") finding that it has subject matter jurisdiction over the Tender Adversaries because they are "related to" the Debtors' consolidated bankruptcy cases pursuant to 28 U.S.C. § 1334(b).  See In re SemCrude, 428 B.R. at 104.  The Court also rejected the collective requests by Samson and other Producers for the Court to abstain from hearing the Tender Adversaries in favor of allowing the Producers to continue to prosecute their state law claims against various Downstream Purchasers in Oklahoma, Texas, Kansas, and New Mexico state courts.  Id.

---

[12]    Judge Frizzell transferred adversary proceedings 09-51070, 09-51941, 09-53285, and 09-53286.  Judge Kern transferred adversary proceedings 09-51518 and 09-51520.  Judge Heaton transferred adversary proceedings 09-52831, 09-52853, 09-52818, 09-52819, 09-52820, 09-52821, 09-52822, 09-52823, 09-52824, 09-52826, 09-52827, 09-52828, 09-52829, 09-52830, and 09-52834.

Unlike the Tender Parties, the Non-Tender Parties did not file adversary proceedings seeking a declaratory judgment in the Court articulating their rights vis-à-vis Samson and the Producers.  Some Non-Tender Parties filed proofs of claim in the Debtors' consolidated bankruptcy cases, while others did not.  Because the determination of whether this Court possesses subject matter jurisdiction over the claims asserted against the Non-Tender Parties necessarily involves a case-by-case assessment of such claims, the relationship of each of the Non-Tender Parties to the Debtors is discussed in detail below.

## III.  DISCUSSION

The Tender Parties Motions and the Non-Tender Parties Motions both require the Court to consider two questions: (i) whether the Court has subject matter jurisdiction over actions at bar that have been transferred to this Court; and (ii) if jurisdiction lies with the Court, whether the Court should abstain from hearing the actions in favor of allowing them to proceed in the Oklahoma courts in which they were originally filed.

**A.   The Court's Subject Matter Jurisdiction over the Claims Against the Tender Parties**

**1.      Bankruptcy Jurisdiction Generally**

The subject matter jurisdiction of this Court is governed by 28 U.S.C. §§ 1334 and 157. Generally, "[s]ection 1334 vests broad primary jurisdiction over bankruptcy proceedings in the District Courts.  District Courts may, however refer bankruptcy matters falling within their jurisdiction to the bankruptcy courts under 28 U.S.C. § 157.  District Courts have exercised this power by routinely referring most bankruptcy cases to the Bankruptcy Courts."  Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999) (internal citations omitted).[13]

---

[13]      In relevant part, 28 U.S.C. § 1334 provides:

More specifically, § 1334(b) vests jurisdiction in the district court for matters "arising under title 11, or arising in or related to a case under title 11." 28 U.S.C. § 1334(b). Matters "arising under title 11" for purposes of 28 U.S.C. § 1334(b) are those in which "a claim is made under a provision of title 11." H.R. Rep. No 595, 95th Cong., 1st Sess. 445 (1977). In other words, the "cause of action is created by title 11." 1 Collier on Bankruptcy § 3.01[3][c][i] (Alan N. Resnick et al. eds., 16th ed. 2009). Matters "arising in" a bankruptcy case are typically "administrative matters that arise only in bankruptcy cases." In re Eastport Assocs., 935 F.2d 1071, 1076 (9th Cir. 1991). Finally, as will be discussed in greater detail below, proceedings "related to" a case under title 11 are those whose outcome "could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins (In re Pacor, Inc.), 743 F.2d 984, 994 (3d Cir. 1984) (overruled on other grounds).

### 2.    Core Jurisdiction

Section 157 divides bankruptcy matters into two categories: core and non-core. A bankruptcy judge has the power to "hear, decide and enter final orders and judgments" in a core proceeding. Halper, 164 F.3d at 836; see 28 U.S.C. § 157(b)(1). A bankruptcy judge also has the power to hear non-core proceedings: "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1).

---

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

A bankruptcy court's power to hear non-core proceedings is, however, limited to submitting proposed findings of fact and conclusions of law to the district court.  Id.

A non-exhaustive list of core matters is provided in 28 U.S.C. § 157(b)(2).  For the purpose of discussing the issues raised in the actions at bar, the relevant enumerated core matters include "matters concerning the administration of the estate," "determinations of the validity, extent, or priority of liens," and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship."  28 U.S.C. § 57(b)(2)(A), (K), and (O).

Additionally, the Third Circuit has held that a matter is core if it "invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."  In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 267 (3d Cir. 1991).  A court "must examine each of the [ ] claims presented to ascertain if it is core, non-core, or wholly unrelated to a bankruptcy case."  Halper, 164 F.3d at 837.  Thus, the Court must consider whether each claim in the transferred actions is a core claim enumerated in 28 U.S.C. § 157(b)(2) or a claim that "could arise only in the context of a bankruptcy case."  Any claim failing those tests is not core, and must then be analyzed to determine whether it is at all "related to" the Debtors' consolidated bankruptcy cases.

The Court has previously held that the claims asserted in the Tender Adversaries are not core matters under 28 U.S.C. § 157.  In re SemCrude, 428 B.R. at 96.  The Court so held because the claims at issue are not properly within the core matters enumerated in 28 U.S.C. § 157(b)(2) and are not claims that could arise only in the context of a bankruptcy case.  Id.  For the same reasons, the claims at issue in the transferred actions—the claims against both the Tender Parties

and the Non-Tender Parties—are likewise too remote from the Debtors' consolidated bankruptcy cases to be considered core matters.

### 3.    "Related-To" Jurisdiction

Because the claims against the Tender Parties in the transferred actions amount to disputes between non-debtors concerning state law issues, the Court has, at best, non-core "related-to" subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b).  The seminal case in this Circuit on the subject of "related-to" jurisdiction is In re Pacor.  743 F.2d 984.  Under In re Pacor, "related-to" jurisdiction exists if "the outcome of [a] proceeding could conceivably have any effect on the estate being administered in bankruptcy."  Id. at 994.  This includes a proceeding "whose outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  Id.  The Third Circuit has recently clarified that "[b]roadly worded as [the In re Pacor test] is . . . related-to jurisdiction 'is not without limitation.'"  W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.), 591 F.3d 164, 171 (3d Cir. 2009).

As mentioned above, the Court has previously considered and ruled upon its subject matter jurisdiction over the Tender Adversaries.  In re SemCrude, 428 B.R. at 96-100.  In the April 9 Opinion, the Court held that the Tender Adversaries were "related to" the Debtors' consolidated bankruptcy cases because, inter alia, any determination the Court made about the ongoing liability of the Tender Parties to the Producers would likely cause the Tender Parties to assert further claims against the Debtors, thereby affecting the distributions to which other creditors would be entitled under the Debtors' plan.  See id. at 99.  Importantly, the Court also

14

found that because the Tender Parties were central to the bargains that were reached in anticipation of plan confirmation, adjudication of the Tender Adversaries would "likely require this Court to construe its own prior orders and rulings, including the Tender Orders, the settlements incorporated into the Plan, and the three opinions issued in the Producer Adversaries." Id. at 100.

The claims against the Tender Parties asserted in the transferred actions involving the Tender Parties necessarily involve these same considerations.  The only meaningful difference between the Tender Adversaries and the instant actions is that the Tender Adversaries were filed in this Court by the Tender Parties, whereas the instant actions were filed by Samson in Oklahoma state and district courts and thereafter removed and/or transferred to this District and referred to this Court.  The parties are the same, as is the underlying relief sought.  The Tender Parties are the very same Downstream Purchasers whose settlements and compromises with other constituents were memorialized in orders and opinions issued by the Court throughout the pendency of the Debtors' consolidated bankruptcy cases.  In fact, the resolution of the Tender Adversaries would effectively dispose of the transferred actions asserting claims against the Tender Parties; they are, after all, but two sides of the same coin.

Stripped to their essence, the Tender Parties Motions are a protestation that the Court got it wrong in the April 9 Opinion: "Samson disagrees with this Court's Opinion . . . and maintains its position that the claims asserted by Samson in Samson's Transferred cases against the Tender Parties do not invoke 'related to' bankruptcy jurisdiction."  Supplemental Memorandum of Samson Resources, 10.  Samson is free to advance that argument subsequently on appeal if it so

chooses.[14]  But Samson has not brought to the Court's attention any salient distinction between the Tender Adversaries and the transferred cases at bar involving the Tender Parties sufficient to place these cases outside the Court's jurisdiction.  For all the reasons already stated in the April 9 Opinion, subject matter jurisdiction lies in this Court pursuant to 28 U.S.C. § 1334 because the claims against the Tender Parties are "related to a case under title 11."

**B.**     **The Court Will Not Abstain from Hearing the Claims Against the Tender Parties**

Having determined that the Court has subject matter jurisdiction over the claims against the Tender Parties, the Court now considers whether it must or should abstain from hearing those actions initially filed in state court[15] asserting these claims in favor of allowing them to go forward in the Oklahoma courts in which they were filed.

**1.**     **Mandatory Abstention**

Samson argues that the Court is required to abstain from hearing the transferred actions asserting claims against the Tender Parties under 28 U.S.C. § 1334(c)(2).  Under § 1334(c)(2), there are six requirements for mandatory abstention: (i) the motion to abstain is timely; (ii) the action is based upon a state law claim or cause of action; (iii) an action has been commenced in state court; (iv) the action can be timely adjudicated in state court; (v) there is no independent basis for federal jurisdiction which would have permitted the action to be commenced in federal

---

[14]     The Court notes that the United States District Court for the District of Delaware has, by opinion and order dated October 26, 2010, dismissed all appeals relating to the April 9 Tender Adversary decision.  In re SemCrude, L.P., Civ. Nos. 10-447, 10-448, 10-449, 10-450, 10-451, 10-452, 10-452, 10-453, 10-454, 10-455, 10-456, 10-457, 10-458, 10-459, 10-460, 10-460, 10-461, 10-462, 10-463, 10-464, 10-465, 10-466, 10-467, 10-468, 10-469 (SLR), 2010 WL 4537921, at *5-6 (D. Del. Oct. 26, 2010).

[15]     Of the transferred actions relating to the Tender Parties, only the following adversary proceedings were initiated in state court: 09-52818, 09-52819, 09-52820, 09-52821, 09-52822, 09-52823, 09-52824, 09-52826, 09-52827, 09-52828, 09-52829, 09-52830, and 09-52834.

court absent bankruptcy; and (vi) the matter is non-core and is only "related to" a case under title 11. In re LaRoche Indus., Inc., 312 B.R. 249, 252-253 (Bankr. D. Del. 2004). A party moving for mandatory abstention "must meet all the requirements of mandatory abstention for relief to be granted." In re Mobile Tool Int'l, Inc., 320 B.R. 552, 556 (Bankr. D. Del. 2005).

The Court finds that mandatory abstention is not appropriate with respect to the claims against the Tender Parties asserted in the transferred actions.[16] Samson has not carried its burden to show that these claims can be timely adjudicated in state court. Although Samson contends that the state courts in which these actions were filed are capable of adjudicating those claims, "[a] naked assertion that the matter can be timely adjudicated in the state court, without more is insufficient to satisfy this requirement." In re Allied Mech. & Plumbing Corp., 62 B.R. 873, 878 (Bankr. S.D.N.Y. 1986) (citing In re Burgess, 51 B.R. 300, 302 (Bankr. S.D. Ohio 1985)). Samson has not presented any evidence in support of its assertion to demonstrate that the claims against the Tender Parties could be timely adjudicated in state court. Georgou v. Fritzshall (In re Georgou), 157 B.R. 847, 851 (N.D. Ill. 1993) (finding that the moving party must present evidence to show that a state court action can be timely adjudicated). Therefore, without evidence to the contrary, the Court has significant concerns as to whether these claims can be timely adjudicated in the various other fora in which they were instituted.

The record reflects that there are collectively almost two dozen lawsuits that relate to the claims against the Tender Parties originating in state and district courts across the state of

---

[16]    In the context of the Tender Adversaries, the Court held that mandatory abstention did not apply, chiefly because an appropriate action had not been commenced in state court. See In re SemCrude, 428 B.R. at 101. This rationale does not apply to all of the transferred actions that include claims against the Tender Parties because some of these actions were in fact initiated in state court.

Oklahoma.  All of these lawsuits are currently still in their infancy, and have been thus far characterized by substantial motion practice devoted exclusively to procedure and venue. Borrowing a phrase from the United States District Court for the Southern District of New York in a similar context, these cases are still "at the starting line" in the state courts.  Renaissance Cosmetics, Inc. v. Dev. Specialists Inc., 277 B.R. 5, 14 (S.D.N.Y. 2002).

In another case, a district court found that abstention was inapplicable with respect to various lawsuits between non-debtor entities, specifically investors who sued the stockbrokers and the founder of the debtor corporation.  Beightol v. UBS Painewebber (In re Global Crossing, Ltd. Sec. Litig.), 311 B.R. 345, 348-49 (S.D.N.Y. 2003).  In that case, the plaintiffs alleged fraud against the defendants in two separate actions both filed in Mississippi state court, seeking damages for the losses they sustained when the value of the debtor corporation's securities plummeted.  Id. at 346-47.  The court found that it had "related-to" subject matter jurisdiction over these two actions because the outcome of the actions could lead to contribution claims against the debtor and therefore "certainly have a 'conceivable effect' on the bankrupt estate." Id. at 347.  In support of their arguments for abstention, the plaintiffs submitted (1) a Mississippi Supreme Court rule that provided for the disposition of civil cases in Mississippi's Chancery Court within eighteen months of the filing date, and (2) a certification from the administrator of the Chancery Court stating that a trial date would be set within approximately six months of remand.  Id. at 348.  However, the court was not persuaded by this evidence and expressed no doubt that the "resolution of the complex issues asserted by plaintiffs in their fraud claims will be anything but speedy, and indeed that the pendency of multiple proceedings in multiple jurisdictions will contribute to slowing down the resolution of [these] claims in any court."  Id. at

348.  The court further explained that the purpose of abstention would be ill-served in this

context:

> In short, § 1334(c)(2) is intended to require federal courts to defer
> to the state courts to handle lawsuits which, although "related to" a
> bankruptcy, can be promptly resolved in state court without
> interfering with the proceedings pending in the federal courts.
> That intention simply has no application to litigation of this sort, in
> which a case properly removed to federal court is intertwined both
> with complex bankruptcy proceedings and equally complex
> securities class actions pending in federal court.   Far from
> promoting "timely adjudicat[ion]" of plaintiffs' claims, to remand
> here would simply complicate and slow down the resolution of
> those claims, as well as of the matters already pending before this
> Court.

Id. at 349.

Here, the resolution of the Producers' claims against the Tender Parties, like the

resolution of the contemplated non-debtor litigation in In re Global Crossing, is likely to involve

complex legal and factual issues.  See In re SemCrude, 407 B.R. at 143 (Bankr. D. Del. 2009)

(noting that the existence and priority of certain asserted lien claims and/or trust rights under

Oklahoma state law is an issue of first impression).  However, it is worth noting that In re Global

Crossing involved only two actions, which that court characterized in the aggregate as "multiple

proceedings," whereas abstention here implicates claims against the Tender Parties that are

asserted in seventeen of the transferred actions, all involving multiple plaintiffs and defendants.

Furthermore, the claims raised against the Tender Parties will eventually need to be heard

on the merits, and pretrial motion practice and discovery presumably will ensue.  To be sure, the

Court intends no disrespect to its sister courts, but it is simply not plausible to suggest that all of

Samson's claims against the Tender Parties can be administered promptly and efficiently in the

broad range of tribunals and jurisdictions in which they were initiated.  See New York City

19

Employees' Retirement System v. Ebbers (In re WorldCom, Inc. Sec. Litig.), 293 B.R. 308, 331

(S.D.N.Y. 2003) ("If each of the actions removed from state court were remanded, it would lead

to duplicative motion practice and repetitious discovery, as well as requiring common issues to

be resolved separately by courts across the country.").  In contrast, this Court's familiarity with

the parties and the issues, forged over the past several years, is likely to aid in the prompt and

efficient adjudication of the disputes between the Producers and the Downstream Purchasers.[17]

Accordingly, the Court finds that Samson has not established that mandatory abstention is either

appropriate or warranted with respect to the claims against the Tender Parties asserted in the

transferred actions initiated in state court.

### 2.    **Permissive Abstention**

Samson also urges the Court to exercise its discretionary authority to abstain from

hearing the actions asserting claims against the Tender Parties pursuant to 28 U.S.C.

§ 1334(c)(1).[18]  Courts have identified the following twelve factors as relevant to determining the

propriety of permissive abstention: (1) the effect on the efficient administration of the estate;

(2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or

unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in

state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

---

[17]    The Court will direct the parties involved in the claims by Samson against the Tender
Parties and the Claim Parties to meet and confer to develop a consolidated  scheduling order to
ensure the prompt and efficient adjudication of these claims.  See Part V infra.

[18]    28 U.S.C. § 1334(c)(1) provides, in relevant part: "[N]othing in this section prevents a
district court in the interest of justice, or in the interest of comity with State courts or respect for
State law, from abstaining from hearing a particular proceeding arising under title 11 or arising
in or related to a case under title 11."

(7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court to be enforced by the bankruptcy court; (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence of non-debtor parties. In re Mobile Tool, 320 B.R. at 556-57.

A number of these factors weigh in favor of abstention. For example, the Court will be called upon to interpret state laws and regulations governing the oil and gas industry, including questions that appear largely unsettled. Moreover, the transferred actions implicating Samson's claims against the Tender Parties involve non-debtor entities, and the Court's subject matter jurisdiction over these actions is, as discussed above, predicated solely upon 28 U.S.C. § 1334(b).

On the other hand, the resolution of the dispute between Samson and the Tender Parties will require the construction of the Court's prior orders and rulings. Additionally, and again with all due respect to our sister courts, the Court is well positioned to provide for the efficient administration of the numerous actions that include the claims against the Tender Parties. The Court has had the unique opportunity to become familiar with the factual background and the parties over the past two years, and it is prepared to provide a single forum to concurrently consider these claims. Ultimately, the disposition of each of the claims at bar, against both the Tender Parties and the Claim Parties, will be grounded in the same factual and legal bases such that considerations of fairness and efficiency favor the consolidated adjudication of these claims. The Court provides a forum that is able to consolidate these various suits, and uniformly and

efficiently adjudicate the claims brought therein.  In re Global Crossing, 311 B.R. at 350 (finding

that the desirability of maintaining two actions related to the debtor's bankruptcy in one forum

clearly militates against abstention); In re WorldCom, 293 B.R. at 333-34 ("[I]f this Court were

to abstain pursuant to Section 1334(c)(1) and remand the litigation originally filed in state court,

motion practice and discovery would proceed separately in many jurisdictions.  The litigation

that would ensue in the various fora would be entirely duplicative and wasteful.").

   Given these countervailing considerations, if the Court were considering permissive

abstention on a blank slate, whether to retain the transferred actions asserting claims against the

Tender Parties or whether to send them back for adjudication in Oklahoma would perhaps be a

close question.  However, the Court does not write on a blank slate in this regard.  In addition to

the Court's own prior ruling in the Tender Adversaries,[19] three federal judges have transferred

venue of these actions.  Among the reasons those judges gave for their rulings is this Court's

familiarity with the parties and factual background of the disputes between the Producers and the

Downstream Purchasers.  E.g., Order, Samson Res. Co. v. Valero Mktg. & Supply Co., Case No.

09-cv-807, 2009 WL 4042912, at *7 (W.D. Okla. Nov. 19, 2009) ("The significant disputes

between the parties as to the interpretation of the confirmed plan are a further indication that the

issues presented in these cases would most appropriately be heard by the Bankruptcy Court.").

For all the reasons given by the transferring courts, and for the reasons given by the Court in the

April 9 Opinion, the Court does not find that permissive abstention as to the transferred actions

asserting claims against the Tender Parties is either appropriate or warranted.

---

[19]    See In re SemCrude, 428 B.R. at 101.

C.    **The Court's Subject Matter Jurisdiction over the Claims Against the Non-Tender Parties**

Whether the Court has subject matter jurisdiction over the claims against the Non-Tender Parties depends on whether these claims are sufficiently "related to" the Debtors' consolidated bankruptcy cases such that the outcome of these claims "could conceivably have any effect on the estate being administered in bankruptcy."  In re Pacor, 743 F.2d at 994.  Although the Debtors' plan has already been confirmed, the Court analyzes its jurisdiction as of the time the actions asserting these claims were filed.  See In re SemCrude, L.P., 428 B.R. at 96-98 (concluding that this Court should analyze its jurisdiction based upon the circumstances present at the time the lawsuit was filed).  These actions were filed by Samson prior to the confirmation of the Debtors' plan, between March and July of 2009.  Therefore, the fundamental inquiry is whether, at the time the claims against the Non-Tender Parties were asserted, the resolution of these claims could conceivably have any effect on the Debtors' consolidated bankruptcy cases.

A more recent Third Circuit decision adds another element to this inquiry.  In In re W.R. Grace, the Third Circuit observed that In re Federal-Mogul Global, Inc., 300 F.3d 368 (3d Cir. 2002), limited the application of the In re Pacor test to extend "related-to" jurisdiction to proceedings that could conceivably affect a debtor's bankruptcy case "without the intervention of yet another lawsuit."  In re W.R. Grace, 591 F.3d at 172 (quoting In re Federal-Mogul, 300 F.3d at 382).  In other words, "there is no related-to jurisdiction over a third-party claim if there would need to be another lawsuit before the third-party claim could have any impact on the bankruptcy proceedings."  Id.

Samson argues that the Non-Tender Parties would have to file another lawsuit in order for the outcome of its claims against the Non-Tender Parties to have any effect on the Debtors.

23

According to Samson, the Non-Tender Parties have not filed valid proofs of claim in the Debtors' consolidated bankruptcy cases, and without such claims against the Debtors, the outcome of the litigation against the Non-Tender Parties could not possibly affect the Debtors. Further, unlike the Tender Parties, the Non-Tender Parties have not tendered any amounts to fund the Debtors' plan distributions, and therefore are ineligible to compete over any particular res belonging to the Debtors.

Samson classifies the Non-Tender Parties into the following three groups, claiming that each one lacks valid claims against the Debtors: (1) Non-Tender Parties who filed proofs of claim but failed to assert indemnity, contribution, reimbursement, or other similar claims; (2) Non-Tender Parties whose affiliates filed proofs of claim; and (3) Non-Tender Parties who filed no proofs of claim.  For the reasons stated below, the Court concludes that it has "related-to" jurisdiction over the claims against both the Non-Tender Parties who filed proofs of claim and the Non-Tender Parties whose affiliates filed proofs of claim (collectively, the "Claim Parties").[20]  The Court concludes, however, that it does not have "related-to" jurisdiction over the Non-Tender Parties who did not file proofs of claim against the Debtors and the Non-Tender Parties whose affiliates likewise filed no proofs of claim against the Debtors (collectively, the "No-Claim Parties").

---

[20]    Samson also argues that, even with respect to the Tender Parties and Non-Tender Parties who have filed claims, such claims are contingent contribution or reimbursement claims that are barred pursuant to 11 U.S.C. § 502(e)(1)(B), and therefore will not affect the Debtors in any event.  The Tender Parties and Non-Tender Parties respond that some of the claims are direct 11 U.S.C. § 503(b)(9) claims, other claims will eventually become fixed, at which time allowance or disallowance can be determined.  At this stage, the record is insufficiently developed and these issues are not fully ripe for resolution.

1.    **"Related-To" Jurisdiction Over the Claim Parties**

Whether the Court has subject matter jurisdiction over the claims asserted by Samson against the Claim Parties is a complicated issue.  Although the Court's "related-to" jurisdiction over non-core proceedings is broad, it is not without bounds.  Celotex Corp. v. Edwards, 514 U.S. 300, 307-08 (1995).  Under In re Pacor, the Court's jurisdictional boundaries extend to proceedings whose outcome may have "any conceivable effect" on the Debtors' estates.  In re Pacor, 743 F.2d at 994.  Under this test, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  Id.  The question of "relatedness" in proceedings that involve non-debtors often turns on whether a debtor's estate would have any obligation to indemnify the losing third party, which would therefore impact the debtor's liabilities.  Proceedings that would require a debtor to contractually indemnify the losing third party are generally deemed to be sufficiently "related to" the bankruptcy case.  See, e.g., Hunnicutt Co. v. TJX Cos. (In re Ames Dep't Stores, Inc.), 190 B.R. 157, 160-61 (S.D.N.Y. 1995).  However, a debtor's liability to indemnify the losing party need not be definite in the form of a guarantee or a finding of automatic liability.  Kelley v. Nodine (In re Salem Mortg. Co.), 783 F.2d 626, 635 (6th Cir. 1986).

Samson contends that the Non-Tender Parties who filed proofs of claim against the Debtors did not include sufficiently specific language in their filings that would entitle them to indemnification, contribution, reimbursement, or other compensation by the Debtors in the event that these parties are found liable to Samson for the oil and gas they purchased from the Debtors.  Samson maintains that the outcome of its claims against these parties therefore would not have

any impact on the Debtors because these parties would not be entitled to seek payment from the Debtors on account of such a finding of liability.  However, the Court disagrees.

Valero, for example, filed three proofs of claim in the Debtors' consolidated bankruptcy cases.  Valero asserts that its proofs of claim include claims based upon an indemnity provision in its contracts with the Debtors.  The record reflects that the proof of claim number 3113 lists Valero's trading contracts with the Debtors and includes claims "in the event that any amounts are determined to be owed under such [c]ontracts."  Therefore, if Valero is deemed liable to Samson for the oil that it purchased from the Debtors, it will invariably seek indemnification from the Debtors based upon the asserted indemnity provision.  Thus, the resolution of Samson's claims against Valero could ultimately affect the Debtors.  Valero's demand for indemnification will not require it to file any other lawsuit against the Debtors because the filing of a proof of claim is treated similar to the filing of a complaint against the Debtors seeking relief for an amount owed; an objection to the proof of claim would thereafter initiate a contested matter.  In re Tender Loving Care Health Serv., Inc., 562 F.3d 158, 162 n.5 (2d Cir. 2009) ("[W]hen a debtor files an objection to a claim, the objection has initiated a contested matter."); see also Marshall v. Marshall, 547 U.S. 293, 301 (2006) (finding that a claims objection is considered a core proceeding).  Samson therefore fails to demonstrate that the outcome of its claims against Valero will have no effect on the Debtors.

Husky and Cimarron have both filed 11 U.S.C. § 503(b)(9) claims.  Husky filed a contingent, unliquidated § 503(b)(9) claim, which states, in part, that "[t]o the extent that Husky Marketing's contractual netting and setoff rights under the Crude Oil Contracts are denied, Husky Marketing reserves the right to amend this proof of claim (i) to assert additional

§ 503(b)(9) claims . . . (ii) to assert any right of setoff . . . and (iii) to assert any right of

recoupment."  Claim No. 5215, Case No. 08-11525.  The claim also provides that "if any party

seeks to recover amounts from Husky Marketing on account of crude oil purchased by Husky

Marketing from the Debtor, Husky Marketing will amend this proof of claim to assert additional

§ 503(b)(9) claims for the total value of the Crude Oil sold by Husky Marketing to the Debtor."

Thus Husky's claim is fundamentally a claim against the Debtors for indemnification.  To the

extent that Husky is found liable to Samson for the oil that it purchased from the Debtors, its

indemnification claim against the Debtors will be triggered without the intervention of another

lawsuit.

Similarly, Cimarron filed two proofs of claim, both of which are triggered "in the event

[Cimarron] is compelled to return all or any portion of such payments or the amounts of such

setoffs to the Debtor for any reason."  Claim Nos. 4490 and 6026, Case No. 08-11525.  If

Samson prevails on its claims, Cimarron could become obligated to Samson for the product it

purchased from the Debtors.  In that event, Cimarron would likely seek reimbursement from the

Debtors on account of its liability to Samson.

Based upon their proofs of claim, Husky and Cimarron appear to have anticipated

precisely the lawsuits that Samson has filed against them.  Although Samson insists that it is not

seeking to disturb the setoff rights for which the Non-Tender Parties negotiated with the Debtors,

and that it is only seeking an independent judgment against these parties, the practical effect of

Samson's desired relief would in fact be to disturb the Non-Tender Parties' setoff rights.  The

Non-Tender Parties would consequently be on the hook for the oil and gas that they purchased

from the Debtors but have purportedly paid for via setoffs and the cancellation of mutual debts

arising therefrom.  Because the Non-Tender Parties who would be adjudicated liable to Samson would thereafter seek payment from the Debtors, Samson—through the elevation of form over substance—ignores the real effect that a ruling in its favor against the Non-Tender Parties would have upon the Debtors.

The record reflects that the other parties who Samson contends have no valid claims against the Debtors are actually in a substantially similar position as Valero, Husky, and Cimarron.  Occidental, Interstate, National, and Coffeyville have each filed proofs of claim based upon their respective transaction history with the Debtors, either in the form of indemnity, reimbursement, or warranty claims, 11 U.S.C. § 503(b)(9) claims, or setoff claims, each of which may entitle these parties to further payment from the Debtors if Samson prevails in its claims against them.  The Court notes that Coffeyville did not directly transact with the Debtors. Instead, it purchased oil from J. Aron, one of the Tender Parties.  However, a finding of liability against Coffeyville would likely spur an indemnity claim against J. Aron, who would then seek additional payment from the Debtors on account of such liability.  Consequently, the Court finds that the aforementioned Non-Tender Parties have all asserted, at minimum, colorable claims against the Debtors that they will likely invoke if Samson is successful in its actions against them.

Various parties who Samson contends have filed no claims against the Debtors appear to be misnamed parties.  That is, rather than naming Sunoco, Chevron, Shell, and Teppco, which are all Non-Tender Parties who actually transacted with the Debtors and who filed proofs of claim in the Debtors' consolidated bankruptcy cases, Samson instead named their respective affiliates (such as general partners) as defendants in certain of its actions at bar.  The Court

expects that, in these instances, appropriate steps will be taken promptly to substitute in (or otherwise amend the complaints) to name the real party in interest. These Non-Tender Parties thereafter will be in the same position as the Non-Tender Parties who filed proofs of claim and were actually named in the actions at bar. To the extent that the Court subsequently determines that Samson has properly sued and named the affiliates of these Non-Tender Parties who otherwise filed no proofs of claim in the Debtors' consolidated bankruptcy cases, such parties will be treated as No-Claim Parties.[21] Accordingly, the Court finds that the resolution of Samson's claims against all Claim Parties[22] may ultimately have an impact on the Debtors sufficient to establish the Court's "related-to" jurisdiction over such claims.

Several additional factors militate in favor of the Court's assertion of "related-to" jurisdiction over Samson's claims against the Claim Parties. First, there is a strong likelihood that this Court's prior rulings and orders will be central to the adjudication of these claims. The Supreme Court recently reaffirmed the power of a bankruptcy court to construe its own orders. Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195, 2202 (2009) (upholding the bankruptcy court's jurisdiction to construe its own orders more than twenty years after confirmation). Among the orders that likely will be construed are various releases, cash collateral and DIP financing orders, and the Court's prior opinions. Each of these documents was shaped and informed by the parties' rights and interests as determined by the Court, and by the record before the Court, in the context of exceedingly complex and interrelated bankruptcy proceedings. Moreover, in the event

---

[21]      See infra.

[22]      As mentioned supra, the following Non-Tender Parties are designated as Claim Parties because either they filed proofs of claim or their affiliates filed proofs of claim: Valero, Husky, Cimarron, Occidental, Interstate, National, Coffeyville, Sunoco, Chevron, Shell, and Teppco.

that Samson ultimately prevails on its actions against the Claim Parties, a court would likely have to interpret the distributions already allowed under the Debtors' confirmed plan, along with various (and disputed) caps, recovery rates, class treatment, and the effect of releases in order to determine the precise amounts that Samson may be entitled to recover from such Claim Parties on account of a finding of liability.

Second, pursuant to the Court's confirmation order, the Debtors are required to "cooperate in any discovery" in the context of "any other litigation by oil and gas producers against [the Downstream Purchasers] relating to oil and gas [the Downstream Purchasers] purchased from the Debtors." This burden on the Debtors could prove to be substantial, especially considering the effort and hours that have thus far being expended on this litigation. Compounding this concern is the prospect of separate prosecution of the various claims and counterclaims before different tribunals in nearly two dozen different but related actions.

Third, the law of the case doctrine directs this Court to "refrain from re-deciding issues that were resolved earlier in the litigation." Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Electrons, Inc., 123 F.3d 111, 116 (3d Cir. 1997). Several federal judges have already considered Samson's arguments and all have found that this Court has jurisdiction over the transferred actions. Judge Frizzell, for instance, cited his concern for the duplication of effort and the risk of inconsistent decisions, and also found that "the relief sought by plaintiffs in this action falls within the 'core' or 'related to' jurisdiction of the Delaware Bankruptcy Court." Order, Samson Res. Co. v. Sunoco Logistics Partners, L.P., Case No. 09-cv-135 (N.D. Okla. Dec. 22, 2009). Judge Kern transferred certain actions at bar for the same reasons. Order, Samson Res. Co. v. J. Aron & Co., Case No. 08-cv-752 (N.D. Okla. July 14, 2009). In a detailed

and well-reasoned order, after plan confirmation, and based upon a full record after hearing oral argument, Judge Heaton applied Third Circuit law and held that "the court has little difficulty in concluding that cases are 'related to' the SemGroup bankruptcy." Order, <u>Samson Res. Co. v. Valero Mktg. & Supply Co.</u>, Case No. 09-cv-807 at 7 (W.D. Okla. Nov. 19, 2009). Finally, Judge Sue Robinson of the United States District Court for the District of Delaware recently denied Samson precisely the relief it now seeks in the motions at bar when she declined to transfer and remand related litigation. <u>See</u> Order, <u>Samson Lone Star, L.L.C. v. ConocoPhillips Co.</u>, No 09-658-SLR (D. Del. Apr. 14, 2010).

Nevertheless, the Court acknowledges that the law of the case doctrine "is not a fixed rule that prevents a federal court from determining its own subject-matter jurisdiction in a given case," <u>In re W.R. Grace</u>, 591 F.3d at 174 (citing <u>Baca v. King</u>, 92 F.3d 1031, 1035 (10th Cir. 1996)), and is inapplicable in any of the following three situations: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." <u>Hayman Cash Register Co. v. Sarokin</u>, 669 F.2d 162, 169-70 (3d Cir. 1982). The law of the case doctrine, however, is especially important in transfer decisions which, if ignored by transferee courts, could "send litigants into a vicious circle of litigation." <u>Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 816 (1988). Such a result could "undermine public confidence in our judiciary, squander private and public resources, and commit far too much of [the Supreme Court's] calendar to the resolution of fact-specific jurisdictional disputes." <u>Id.</u> at 818-19. To prevent this "vicious circle," the United States Supreme Court instructs that transfer decisions should be ignored only in rare circumstances: "Under law of the case principles, if the transferee court can find the transfer decision <u>plausible</u>,

its jurisdictional inquiry is at an end." Id. at 819 (emphasis added). Thus, absent a showing by Samson that one of the three exceptions applies, the effect of the transfer decisions is that the Court's jurisdictional inquiry is at an end so long as the transferring courts' decisions to transfer the actions at bar are "plausible."[23]

Here, Samson has not shown that any of the exceptions apply. Samson argues that plan confirmation and the settlements attendant thereto represent important new facts that were not before the transferring courts. However, inasmuch as jurisdiction is determined as of the time a suit is filed, the fact that the Debtors' plan has since been confirmed does not affect the Court's jurisdictional analysis. See In re Seven Fields Dev. Corp., 505 F.3d 237, 265 (3d Cir. 2007) ("related-to" jurisdiction depends on whether a suit is filed before or after confirmation). Samson further argues that the Third Circuit's decision in In re W.R. Grace represents supervening new law. But the principle that Samson cites as new law—that "related-to" jurisdiction does not exist if the Debtors could not be affected absent the intervention of another lawsuit—was established almost a decade ago in In re Federal-Mogul. 300 F.3d 368. The In re W.R. Grace decision merely cites and reaffirms In re Federal-Mogul. In re W.R. Grace, 591 F.3d at 171-72. Judge Robinson was certainly aware of In re W.R. Grace when she declined to remand the cases transferred to her from Oklahoma. Finally, for all the reasons stated in this Opinion, this Court does not believe that any of the transferring courts' decisions were "clearly

---

[23]    The Third Circuit has construed Christianson narrowly, limiting its application to transfer cases. See Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Electrons, Inc., 123 F.3d at 118 ("[W]e think Christianson's commentary on the law of the case and jurisdiction applies only within the context of transfer cases."). That is no limitation here, inasmuch as these are transferred cases.

erroneous" or implausible.  Consequently, the law of the case doctrine further supports the Court's subject matter jurisdiction over Samson's claims against the Claim Parties.

### 2.   No "Related-To" Jurisdiction Over the No-Claim Parties

Based upon the record before the Court, the class of No-Claim Parties presently includes only Oasis.  This party has neither filed a proof of claim in the Debtors' consolidated bankruptcy cases nor asserted any other grounds for why the Debtors may ultimately be affected by the outcome of Samson's claims against it.  To the extent that the Court subsequently determines that there are other Non-Tender Parties who are found to have not filed claims against the Debtors, which could conceivably impact the Debtors if Samson prevails on its claims against these parties, such parties will be treated as No-Claim Parties.  However, to the extent that the Court subsequently determines that any of the asserted No-Claim Parties are found to have filed valid claims against the Debtors, these parties will be treated as Claim Parties.

The Court concludes that the claims against the No-Claim Parties are not sufficiently "related to" the Debtors' consolidated bankruptcy cases to sustain a finding that the Court has subject matter jurisdiction over these claims.  Unlike the causes of action asserted by Samson against the Claim Parties, Samson's causes of action  against the No-Claim Parties would not affect the Debtors' estates because the No-Claim Parties have no basis pursuant to which they could pursue payment from the Debtors on account of their liability to Samson.  Even pursuant to the broad "related-to" jurisdictional grant under In re Pacor, whereby the Court may exercise jurisdiction over any matter that may have "any conceivable effect" on the administration of the Debtors' consolidated bankruptcy cases, the reasoning in In re W.R. Grace nonetheless limits the Court's jurisdiction over Samson's claims against the No-Claim Parties.  In re W.R. Grace, 591

F.3d at 172.  In In re W.R. Grace, the Third Circuit held that a debtor would not be bound by any judgment against a third party resulting from litigation between non-debtors, absent an intervening or subsequent action against the debtor brought by the losing non-debtor.  Id. Specifically, for a debtor to incur any liability on account of such third-party litigation, the third party adjudicated liable in such litigation would first have to file a separate action against the debtor for indemnity or contribution in the Court, and thereafter prevail on its action against the debtor.  Id. at 172-73.

In support of their jurisdictional arguments, certain of the Downstream Purchasers cite to a case from the Fifth Circuit Court of Appeals with facts nearly identical to the facts in the actions at bar.  In re TXNB Internal Case, 483 F.3d 292 (5th Cir. 2007).  In that case, the Fifth Circuit affirmed a district court's decision, which had affirmed a bankruptcy court's decision to exercise "related-to" subject matter jurisdiction over non-debtor litigation.  Id. at 296-99.  In that case, a gas producer who had sold gas to the debtor, brought an action against a downstream purchaser who had paid for the gas it received from the debtor by offsetting its prior overpayment to the debtor against the value of the delivered gas.  Id.  The Fifth Circuit upheld the bankruptcy court's exercise of "related-to" jurisdiction over the non-debtor litigation notwithstanding the fact that neither the producer nor the purchaser had filed claims against the debtor in the bankruptcy case.  Id.  However, in In re TXNB, the debtor had previously moved the bankruptcy court to permit it to intervene in the non-debtor litigation, based upon its assertion that it was the real party in interest to the producer's lawsuit against the downstream purchaser because the producer was seeking to enforce its alleged lien against the gas that had been delivered to the purchaser.  Id. at 297.  The bankruptcy court granted the debtor's motion and

34

thereafter exercised jurisdiction over the case.  Id.  The Fifth Circuit reasoned that the bankruptcy court properly asserted jurisdiction over the case because the outcome of the producer's litigation "is likely to affect the administration of the debtors' estates and may alter the debtors' rights and liabilities."  Id. at 298.  The debtor's intervention in the non-debtor litigation would assure that the outcome of the litigation would have an impact on the debtor.

Here, however, the outcome of Samson's actions against the No-Claim Parties is unlikely to have any immediate effect on the Debtors because these parties presently have no claim against the Debtors, even in the event that Samson prevails against the No-Claim Parties.  In order for the outcome of the litigation against the No-Claim Parties to affect the Debtors, the No-Claim Parties would first have to institute a claim or a separate action against the Debtors seeking indemnity, contribution, reimbursement, or a similar remedy.  Moreover, unlike the debtors in In re TXNB, the Debtors here have not intervened in the litigation between Samson and the actions that involve the No-Claim Parties, and therefore the outcome of such litigation would, standing alone, have no impact on the Debtors.

**D.      The Court Will Not Abstain from Hearing the Claims Against the Claim Parties**

Having determined that the Court has subject matter jurisdiction over the transferred claims against the Claim Parties, the Court now considers whether it must or should abstain from hearing these matters in favor of allowing them to go forward in the Oklahoma courts in which they were originally filed.

**1.      Mandatory Abstention**

The Court declines to find that mandatory abstention is applicable to the actions asserting claims against the Claims Parties because, consistent with the Court's decision to hear the claims

against the Tender Parties as discussed above, the Court is not confident that these matters can be timely and efficiently adjudicated in the other fora. These claims all involve numerous lawsuits initiated in state and district courts throughout Oklahoma that all relate to oil and gas transferred from the Producers to the Debtors and later to the Downstream Purchasers. There is no immediately apparent mechanism for reliable consolidation and coordination of these claims outside this Court,[24] and as noted above, it appears likely that the Debtors will be required to participate in the adjudication of these disputes, at a minimum to respond to discovery demands from all litigants. Accordingly, for these reasons and for the same reasons that the Court earlier declined to abstain from hearing the claims against the Tender Parties, the Court concludes that mandatory abstention is not warranted with respect to the actions asserting claims against the Claim Parties.

## 2. **Permissive Abstention**

The Court will not permissively abstain from hearing the actions that assert claims against the Claim Parties, for the same reasons provided above with respect to the claims against the Tender Parties. First, as discussed above, the law of the case doctrine counsels that the transfer decisions of other courts should be respected insofar as jurisdiction plausibly lies in this Court. See Christianson, 486 U.S. at 816. Second, to the extent that the Court's prior experience enables it to provide prompt and coordinated administration for Samson's causes of action against the Claim Parties, along with the causes of action asserted against the Tender Parties, the

---

[24]    As noted above, the Court will direct the parties involved in the claims by Samson against the Tender Parties and the Claim Parties to meet and confer to develop a consolidated scheduling order to ensure the prompt and efficient adjudication of these claims. See Part V infra.

interests of all parties will be best served if the Court retains the actions asserting claims against the Claim Parties.

**E.**     **Supplemental Jurisdiction**

In oral argument, some of the Downstream Purchasers urged the Court to assert supplemental jurisdiction over the claims against both the Tender Parties and the Non-Tender Parties.  Whether the Court may assert supplemental jurisdiction under 28 U.S.C. § 1367 is an issue of first impression in this District and in the Third Circuit.  The Ninth Circuit is the only circuit that has thus far permitted a bankruptcy court to exercise supplemental jurisdiction where the court may not otherwise have subject matter jurisdiction.  In re Sasson, 424 F.3d 864, 869 (9th Cir. 2005) ("Thus, at present, the bankruptcy court's 'related to' jurisdiction also includes the district court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 'over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'").  The Fifth Circuit, however, had previously declined to extend this broader jurisdictional grant to a bankruptcy court.  Walker v. Cadle Co. (In re Walker), 51 F.3d 562, 572 (5th Cir. 1995) ("While § 1367 addressed the power of the district courts to exercise supplemental jurisdiction, it did not discuss the power of the bankruptcy courts to reach pendent parties. . . . Because there is no Congressional statute conferring upon the bankruptcy courts the power to exercise supplemental jurisdiction, we find no error in the district court's conclusion that the bankruptcy court did not have the power to [assert supplemental jurisdiction over claims].").

More recently, the Bankruptcy Court for the Southern District of New York also opined on the issue.  In re Enron Corp., 353 B.R. 51, 61 (Bankr. S.D.N.Y. 2006).  Finding that

bankruptcy courts do not have the power to assert supplemental jurisdiction over claims, the

court explained that

> the jurisdictional grant in 28 U.S.C. § 1334(b) and 28 U.S.C. §
> 157, by implication, negates a bankruptcy court's exercise of
> jurisdiction of a supplemental non-federal claim in instances where
> that claim has no impact on the bankruptcy estate.  The carefully
> crafted conferral of jurisdiction under 28 U.S.C. § 1334 and 28
> U.S.C. § 157 would be undermined if bankruptcy courts were
> authorized to exercise supplemental jurisdiction.

Id.

 This Court finds the reasoning in In re Walker and In re Enron persuasive, and therefore

declines to assert supplemental jurisdiction as an independent ground for finding subject matter

jurisdiction over Samson's claims against the Downstream Purchasers.

## V.  BRIEFING AND DISCOVERY ISSUES

 Having determined that the Court possesses subject matter jurisdiction over the actions at

bar that implicate Samson's claims against the Tender Parties and the Claim Parties, the Court

directs the parties to these claims to meet and confer to develop a consolidated scheduling to

ensure the prompt and orderly administration of the claims.  This scheduling order should cover,

inter alia, the timelines for discovery, dispositive motion practice, and other pretrial proceedings,

and suggested trial dates.  Pursuant to 11 U.S.C. § 105(d), the Court has scheduled a status

conference for February 24, 2011 to consider entry of such a scheduling order.

## VI.  CONCLUSION

 For the foregoing reasons, the Court finds that it has subject matter jurisdiction over the

claims asserted by Samson against both the Tender Parties and the Claim Parties.  The Court

finds that abstention with respect to these claims is inappropriate and unwarranted, and thus the

Court will not abstain from hearing these claims.[25]  However, the Court finds that it lacks subject

matter jurisdiction over the individual claims asserted by Samson against the No-Claim Parties.

     The Tender Parties Motions and the Non-Tender Parties Motions will be denied to the

extent that they request the Court to abstain, retransfer, and/or remand the actions that implicate

Samson's claims against the Tender Parties and the Claim Parties.  The Court will therefore

retain the transferred actions that implicate Samson's claims against the Tender Parties and the

Claim Parties, but will dismiss from these actions any individual claims asserted against the No-

Claim Parties, viz., Oasis Transportation and Marketing Company, therein.[26]

     In the interest of efficient and prompt administration of this litigation, the Court will

conduct a status conference on February 24, 2011 for the purpose of considering entry of a

consolidated scheduling order.

     An appropriate Order follows.

BY THE COURT:

Dated:     Wilmington, Delaware
          December 13, 2010       Brendan Linehan Shannon
                       United States Bankruptcy Judge

---

[25]    The Court acknowledges that Samson also moves to retransfer the transferred actions pursuant to 28 U.S.C. §§ 1404 and 1412 and pursuant to equitable remand under 28 U.S.C. § 1452(b).  The Court finds that venue is proper in this Court and that the principles of equitable remand do not favor retransfer of the actions at bar for the reasons already discussed in the Opinion.

[26]    The Court will dismiss Samson's claims against the No-Claim Parties in the following adversary proceedings: 09-52818, 09-52819, 09-52820, 09-52821, 09-52822, 09-52823, 09-52824, 09-52826, 09-52827, 09-52828, 09-52829, 09-52830, and 09-52834.  Dismissal is without prejudice to the plaintiffs' right to pursue such claims in the courts in which the actions were initiated.